FRED KIMBLE *et al.*

*v.*

THE CITY OF PEORIA.

*Filed at Ottawa January 18, 1892.*

1. MUNICIPAL CORPORATION—*ordinance—validity—prior appropria-tion.* A city charter prohibited the making of any contract or the incur-ring of any expense unless an appropriation was first made concerning the same, and also required all ordinances to be published within thirty days after their passage. The fiscal year of the municipality began on January 1, and all appropriations were required to be made during the first quarter of the fiscal year. In the proper time $1500 was appro-priated for printing. When an ordinance was passed enough of the appropriation remained unexpended to pay for the publication of the same : *Held,* that the ordinance was valid, and that if other debts con-tracted thereafter for printing were in excess of the appropriation, that could not affect the validity of the ordinance.

2. Where an ordinance is passed and published in the proper mode, it will become a valid ordinance, although the city authorities may have exceeded their authority in incurring or contracting a debt for its publication. If the appropriation was exhausted when such ordi-nance was published, any tax-payer of the city might, no doubt, in an appropriate action, enjoin the payment of the debt thereby incurred, but that would in no way affect the validity of the ordinance.

3. ORDINANCE FOR PAVING—*cost to be paid by special taxation—sufficiency.* An ordinance for the improvement of a street by special taxation, provided that the curb-stones already set, when necessary, should be taken up and re-set, so as to leave a roadway sixty feet wide in the center of the street; that the space between curb-stones  e graded and paved with paving brick of the best quality made; that the roadway should be excavated a depth of ten inches below the per-manent pavement grade ; that upon the bed so excavated, a bed of gravel five inches in depth should be placed, and after being rolled and pressed in shape, the brick pavement should be laid upon the gravel bed in such manner as to bring the upper surface of the brick pavement up to and parallel with the pavement grade of the street, and that the materials used should be selected under the supervision of the city engineer and street committee : *Held,* that the ordinance was not obnoxious to the objection that it failed to properly and sufficiently describe the nature and character of the improvement.

4. An ordinance for paving a street provided that the cost of the improvement, "exclusive of the cost of making and improving street and alley intersections," should be paid by special tax thereby levied upon contiguous real estate according to frontage, and that the cost of paving street and alley intersections should be paid by the city :" *Held,* that the ordinance was sufficiently certain, though it failed to show, in dollars and cents, the amount to be levied as a special tax and the amount to be paid by the city. It is sufficient that the datum is given by which the several amounts may be fixed.

5. SAME—*time of passing appropriation ordinance.* Where an ordinance for the paving of a street by special taxation is passed so late in a fiscal year that the improvement can not be made in that year, an appropriation ordinance for the payment of the cost of the intersections of streets and alleys by the city may be made in the next succeeding fiscal year, and the fact that such appropriation ordinance is not passed before the institution of the proceedings will not invalidate the ordinance or proceedings.

6. COMMISSIONERS TO ASSESS SPECIAL TAX—*compensation, how paid.* The commissioners appointed by the court to assess a special tax for the improvement of a street by a city are officers of the court and not the employes of the city, and their fees or compensation are a part of the expense of levying and collecting the tax, and no appropriation is required of the city to pay for the same.

APPEAL from the County Court of Peoria county; the Hon. S. D. WEAD, Judge, presiding.

Mr. I. C. PINCKNEY, for the appellants.

Mr. W. T. WHITING, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This is an appeal from a judgment of the county court of Peoria county, confirming a special tax levied for the purpose of improving Hamilton street, in the city of Peoria, from the south-easterly line of Adams to the north-westerly line of Water street. At the time the ordinance was passed providing for the improvement, the city of Peoria was organized under a special charter; but it is conceded in the argument that the city had adopted article 9, chapter 24, of the Revised Statutes of 1874, entitled "An act to provide for the incorpo-

ration of cities and villages," and the proceedings in the case were instituted and conducted under the provisions of such article.

The ordinance providing for the improvement was passed on the 2d day of December, 1890. On the 17th day of the same month, the commissioners appointed by the city council to make an estimate of the cost of the improvement, including costs of collecting, and all costs and charges of court relating thereto, reported their estimate to the city council, as follows:

| | |
|---|---:|
| Excavation, 3123 cubic yards, at 30 cents, - - | $936 90 |
| Curb setting, 1638 feet, at 5 cents, - - - | 81 90 |
| Brick pavement, 5354 square yards, at $1.55, - | 8298 70 |
| Cost of levy assessment and superintendence, 6% of the above, - - - - - - - | 559 05 |
| Total - - - - - - - | $9876 55 |

A resolution was passed by the city council at the same date, approving the estimate as reported, and directing the city attorney to file a petition in the circuit court for the appointment of commissioners to assess the cost of the improvement. A petition was filed, and in due time commissioners were appointed, as prayed for in the petition. The commissioners made and filed, on the 19th day of December, an assessment roll, containing a description of each lot along the line of improvement and the amount of the special tax levied thereon. In the report to the court, which is a part of the assessment roll, the commissioners show that they estimated the cost of the entire improvement at the sum of $9876.55, from which they deducted the estimated cost of improving the intersections of all the streets and alleys embraced on the line of the improvement, which was $1619.95, leaving remaining $8256.60, which was assessed upon the property. The assessment roll having been filed, it stood for confirmation at the January term, 1891, of the county court, and Mary N. Halleck, Jacob Darst, Fred Kimble, John

R. Zeigler, Adaline Cole, and the Peoria Casket Company, appeared and filed objections, and on the hearing the objections were all overruled, and the special tax assessed was confirmed.

We will consider the objections in the order in which they are presented in the argument of counsel. The fourth was as follows:

"*Fourth*—That said ordinance incurs an expense which was not provided for in the last annual appropriation ordinance, and in such respect is a violation of the city charter, and is therefore illegal and void, as well as all subsequent proceedings thereunder."

Section 27, of chapter 5, of the charter of the city of Peoria provides: "No contract shall be hereafter made by the city council, or any member, or committee or member thereof, and no expense shall be incurred, unless an appropriation shall have been previously made concerning such expense." Another provision of the charter requires all ordinances to be published in some newspaper in the city within thirty days after their passage, and it is contended that there was no money appropriated to pay the expense of publishing the ordinance in question, and hence the ordinance is void. The position of counsel is not sustained by the evidence heard by the court in support of the objection relied upon to defeat the ordinance. The fiscal year of the city of Peoria begins on the first day of January in each year, and all appropriations for the city expenditures during the year must be made during the first quarter of the fiscal year. (Charter, chap. 5, sec. 21.) In 1890, within the first quarter of the fiscal year, the city of Peoria, by proper ordinance, appropriated for printing and advertising $1500. On the 2d day of December (the date the ordinance in question was passed) the city had expended for printing and advertising $1438.80, leaving a balance of the appropriation unexpended of $61.20, which, as the evidence shows, was more than double the sum required to pay for the

cost of printing the ordinance in question. It therefore appears, from appellants' own showing, that the objection to the ordinance is untenable. The fact that the appropriation may have been subsequently exhausted in the payment of other printing contracted for by the city after December 2, can have no bearing on the ordinance in question. It was enough that the city had funds of the appropriation unexpended at the time the ordinance was passed, sufficient to pay for its publication.

But conceding that there was no unexpended appropriation to pay for printing the ordinance at the time it was passed and published, the fact that the officers of the city may have exceeded their authority in contracting with the printers for the publication of the ordinance would not invalidate the publication or vitiate the ordinance. When an ordinance is passed and published in the mode prescribed by the charter, it becomes a valid ordinance, although the city authorities may have exceeded their authority in incurring or contracting a debt for its publication. If the appropriation was exhausted when the ordinance was published, no doubt any tax-payer of the city might, in an appropriate action, have enjoined the payment of the amount charged for the publication; but we are unable to see how a failure of the printer to recover for publication could affect the validity of the ordinance. When the ordinance was published as required by the charter it became a valid ordinance, and as its validity in no manner depended upon the contract under which it was published, whether the contract for publication was valid or invalid was a matter of no consequence.

It is also claimed that the commissioners appointed by the court to make the tax assessment are to be regarded as employes of the city, and that their fees or charges are an expense, within the meaning of the charter, for which no appropriation was made. The commissioners are in no just sense employes of the city. Upon filing the petition the law

11—140 ILL.

requires the commissioners to be appointed by the court. They are officers of the court, and as such their fees or compensation are a part of the court costs in the case, to be taxed as other costs, as a part of the expense of levying and collecting the special tax.

As to the objection that no appropriation had been made to pay for the cost of the paving of street and alley intersections, but little need be said. The ordinance providing for the improvement having been passed so late in the year 1890, it is apparent that it was not within the contemplation of the city to make the improvement in Hamilton street during the year 1890, but the plan no doubt was, to pass the ordinance in December, 1890, and obtain a confirmation of the tax assessment at an early day in 1891, and make the improvement in that year. As the fiscal year for 1891 did not begin until January 1, 1891, the city council had ample time, during the first quarter of the fiscal year, to make the appropriation to cover the cost of the improvement at the street and alley intersections.

The second objection interposed by the appellants is, that the ordinance does not properly and sufficiently describe the nature and character of the improvement. In order to dispose of this question properly, it will be necessary to refer briefly to the ordinance. It provides:

"Sec. 1. That Hamilton street, from south-east line of Adams to north-west line of Water street, be improved as follows, viz.:

"Sec. 2. The curb-stone along each side of Hamilton street, where necessary, shall be taken up and re-set, so as to leave a roadway sixty feet wide in centre of said street.

"Sec. 3. That the space between curb-stones be graded, and paved with brick.

"Sec. 4. The brick to be used in said pavement shall be of the best quality of paving brick made."

Section 5 provides that the roadway shall be excavated a depth of ten inches below the permanent pavement grade of street. Upon the road-bed as thus excavated, a bed of gravel five inches in depth is to be placed, and after being pressed and rolled in shape, the brick pavement is to be laid upon this five-inch bed of gravel, in such a manner that it will bring the upper surface of the brick pavement up to and parallel with the pavement grade of street. Section 8 provides that the materials required for the improvement shall be selected under the supervision of the city engineer and street committee.

The main objections pointed out, in the argument, to the ordinance are, that it is not sufficiently definite as to the kind of brick to be used, and that it is uncertain whether the brick shall be laid in single or double courses. We do not regard the objections well taken. The ordinance specifies that the brick shall be of the best quality made. During the past few years paving brick have been manufactured, and quite generally used in cities and towns for paving streets. It is well understood that different qualities of brick have been manufactured in different localities. When, therefore, the ordinance called for the best quality made, there could be no uncertainty in regard to the character of brick required to be used in the construction of the work. As to the thickness of the brick required for the work, when the different provisions of the ordinance are considered there would seem to be no trouble in this regard. In the first place, the ordinance requires the road-bed to be excavated ten inches. Then it provides that the space shall be filled with five inches of gravel, and the remaining five inches with paving brick placed upon the gravel, after the gravel is well packed. The ordinance also provides that the materials used shall be selected under the supervision of the city engineer and street committee. Under this last clause of the ordinance, whether one or two courses of brick shall be used would depend upon the brick selected by the officers therein named. That selection, of course, would be

made or determined before a bid for the work would be received, and then all uncertainty would be removed, so that an intelligent bid could be made for the work.

The third objection to the ordinance is: "That said ordinance does not fix the amount of the cost of said improvement to be levied upon the property contiguous to the line of said improvement, nor the proportion of the total cost thereof to be paid out of the general fund of said city, but has required the commissioners to apportion such, which is a delegation of their authority prohibited by law, and renders the assessment herein void."

Section 7 of the ordinance provides, in substance, as follows: That the cost of the improvement, "exclusive of the cost of making and improving street and alley intersections," shall be paid by special tax hereby levied upon contiguous real estate, according to frontage, in accordance with provisions of the City and Village act of 1872. "The cost of paving street and alley intersections shall be paid for by the city of Peoria out of the general fund." Under section 9 of the ordinance three persons were appointed as commissioners to make an estimate of the cost of said improvement, including cost for labor and materials and the expense of collecting the amount, and report their estimate to the council, in writing. The commissioners in due time submitted a report as required by the ordinance, in which they estimated the entire cost of the improvement at $9876.55. This included the cost of improving the intersections and alleys, which they estimated at the sum of $1619.95. Deducting this amount from the entire cost, left the sum of $8256.60, which was taxed upon the several lots contiguous to the improvement. This report was approved by the city council.

Under the rule established in *Enos* v. *City of Springfield,* 113 Ill. 69, and *Green* v. *City of Springfield,* 130 id. 522, the objection to the ordinance can not be sustained. The ordinance in plain terms provides that the entire cost of the

improvement, except street and alley intersections, shall be levied upon contiguous property, and as to the cost of the improvement of the street and alley intersections, that shall be paid by the city of Peoria from general taxation. While the amount to be levied as a special tax and the amount to be raised from general taxation is not stated in the ordinance in dollars and cents, yet the data by which the several amounts may be fixed is given, and under the rule established in *City of Sterling* v. *Galt*, 117 Ill. 17, that is all that is required.

It is also claimed in the argument, that at the street and alley intersections the street is wider than in front of the objectors' property. Whether that fact, if true, can affect the validity of the proceeding, is a question that does not arise on this record, as no objection of that character was interposed to the confirmation of the assessment in the county court.

The judgment of the county court will be affirmed.

*Judgment affirmed.*